NOT FOR PUBLICATION

FILED
JEANNE A. NAUGHTON, CLERK
APR 24 2017
U.S. BANKRUPTCY COURT
CAMDEN, N.J.
BY_____DEPUTY

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

In re:

RICHARD M. CRIVARO,                    Case No. 15-23020 (JNP)

        Debtor.                    Chapter 13
-----------------------------------------X

UNITED SUPPLY COMPANY,

        Plaintiff,

v.                                      Adv. Pro. No. 15-2262

RICHARD M. CRIVARO,

        Defendant.
-----------------------------------------X

## OPINION

**APPEARANCES:**

Andrew R. Turner
Turner Law Firm
76 South Orange Ave.
PO Box 526
South Orange, NJ 07079

Joseph J. Rogers
Barbara J. Snavely
Law Offices of Joseph Rogers
Washington Professional Campus
900 Route 168
Suite I-4
Turnersville, NJ 08012

*Attorney for the Plaintiff,*
*United Supply Company*

*Attorneys for the Defendant,*
*Richard M. Crivaro*

**JERROLD N. POSLUSNY, JR., U.S. Bankruptcy Judge**

This adversary proceeding concerns the dischargeability of a debt, $132,500, originally owed by RC Heating and Air Conditioning ("RC") to United Supply Company ("United Supply") and guaranteed by Richard Crivaro (the "Debtor"), who owned and operated RC. United Supply alleges that the Debtor committed fraud at the time he signed the Guaranty and that his transfer of real property was fraudulent and shows that United Supply's claim should be non-dischargeable. For the reasons set forth below, the Court finds that there was no fraud, and therefore the debt is dischargeable.

## BACKGROUND

RC sold and installed heating and air conditioning equipment to residential customers, buying supplies from numerous vendors including United Supply. United Supply conducted business with RC for a number of years. In 2006, the Debtor executed a corporate Credit Application and Personal Guarantee to United Supply (the "Guaranty"). Immediately preceding the signature line the Guaranty states:

> This is to certify that the undersigned is a principal in the above-named business. In consideration for the extension of credit by [United Supply] and its divisions and any affiliates the undersigned jointly and severally do personally guarantee payment of all monies owed.

Tr. 24

The Debtor acknowledged that he signed the Guaranty, but persisted that he did not actually guarantee RC's indebtedness and that the above language should not be enforced. The Debtor testified as such notwithstanding a ruling of the Superior Court of New Jersey concluding the Debtor did, in fact, intend to personally guarantee RC's debt to United Supply.

1

During 2013 and early 2014, RC owed United Supply between $60,000 to $100,000 on a 90-day window of payment. RC's account with United Supply fell over 90 days overdue in June 2014. (Tr. P. 71: 19-20).

RC's business began its decline when it unknowingly began installing defective equipment purchased from a company that filed bankruptcy, preventing RC from attaining additional, different business due to the need to fix defective units. (Tr. P. 59: 19-20).

RC filed a Chapter 11 petition on June 9, 2014, which case eventually converted to Chapter 7. The Debtor did not make any payments to United Supply, claiming that there was no personal guaranty. United Supply thus filed a lawsuit in the Superior Court of New Jersey Law Division Somerset County (Case No. SOM L 847-14). The Superior Court concluded that the Debtor intended to guarantee RC's debt, holding that the Guaranty constituted a binding contract between the parties, and entered an order of judgment in favor of United Supply for $132,500 on June 2, 2015. The Debtor filed his bankruptcy petition on July 10, 2015.

The Debtor and his wife purchased 4 Indian Trail, Menonah, New Jersey (the "Property") on May 18, 2011, for $745,000. There is a substantial mortgage on the Property and the Chapter 7 trustee did not find any value in the Property, ultimately abandoning it. On June 18, 2013, the Debtor and his wife transferred the Property to their three children, as joint tenants with the right of survivorship, for $1.00. The Debtor and his wife retained a life estate.

The complaint alleges that United Supply's claim should be non-dischargeable under 11 U.S.C. § 523(a)(2)[1] and that the Debtor's transfer of the Property was fraudulent and conducted

---

[1] Although 11 U.S.C. § 523(a)(6), or willful and malicious injury, was mentioned briefly in the complaint. See Complaint ¶ 47. Little, if any, testimony was elicited at trial to support such claim.

2

without value. Trial was held on September 14, 2016, after which the parties submitted proposed findings of fact and conclusions of law.

## JURISDICTION

The Court has jurisdiction over this adversary proceeding under 28 U.S.C. §§ 1334(a) and 157(a) and the Standing Order of the United States District Court dated July 10, 1984, as amended September 18, 2012, referring all bankruptcy cases to the bankruptcy court. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A), (H), & (I). Venue is proper in this Court pursuant to 28 U.S.C. § 1408. The following constitutes the Court's findings of fact and conclusions of law as required by Fed. R. Bankr. P. 7052.[2]

## DISCUSSION

I.    <u>First Count – 11 U.S.C. §§ 523(a)(2) & (6)</u>

United Supply contends that its claim is nondischargeable under 11 U.S.C. §§ 523(a)(2) & (6). Section 523(a)(2) excepts from discharge debts obtained by either:

> (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition; [or]
> (B) [the] use of a statement in writing that is materially false respecting the debtor's or an insider's financial condition on which the creditor to whom the debtor is liable for such money, property,

---

Moreover, neither party's post-trial brief included a discussion of willful or malicious injury. Therefore, the Court considers this basis for recovery as being waived. Even if it was not waived, United Supply cannot prevail under § 523(a)(6) for the same reasons it cannot prevail § 523(a)(2), discussed herein.

[2] To the extent that any of the findings of fact constitute conclusions of law, they are adopted as such. Conversely, to the extent that any conclusions of law constitute findings of fact, they are adopted as such.

3

services, or credit reasonably relied, and that the debtor caused to be
made or published with intent to deceive.

11 U.S.C. § 523(a)(2)(A)-(B) (internal marks and punctuation omitted). Prevailing on a complaint under § 523(a)(2) requires a plaintiff to prove the required elements by a preponderance of the evidence. In re Giquinto, 388 B.R. 152, 165 (Bankr. E.D. Pa. 2008).

To prevail under the "actual fraud" theory of subsection (a)(2)(A), United Supply must establish that: (1) the Debtor obtained money, property or services through a material misrepresentation; (2) the Debtor, at the time of the transaction, had knowledge of the falsity of the misrepresentation or reckless disregard or gross recklessness as to its truth; (3) the Debtor made the misrepresentation with intent to deceive; (4) United Supply reasonably relied on the representation; and (5) United Supply suffered loss, which was proximately caused by the Debtor's conduct. In re Moeller, 2014 WL 1315854, *5 (Bankr. D.N.J. Mar. 31, 2014) (citing In re Cohen, 185 B.R. 180, 186 (Bankr. D.N.J. 1995)). Prevailing under subsection (a)(2)(B) also requires establishing an "intent to deceive." 11 U.S.C. § 523(a)(2)(B).

The Superior Court found that the Debtor intended to, and did, make a personal guaranty. In its Opinion, the Superior Court stated the following:

> If the Defendant did not intend to provide his personal guarantee as part of that bargain, he should have more clearly provided his intention. He did not. This Court finds his denial at trial, now that he is faced with responsibility for his bankrupted company's debts, to be <u>not</u> credible.

See Doc. 8, Ex. "A," Letter, Opinion of the Superior Court of New Jersey, at 8 (the "Superior Court Opinion").

The Superior Court rejected the Debtor's testimony that he never intended to guarantee the debt, finding his testimony to be incredible. The Superior Court then determined there was a

4

meeting of the minds, that the Debtor intended to guarantee RC's debt to United Supply, and ultimately that a valid contract existed between the parties.
See Superior Court Opinion at 6.

United Supply argues that the Debtor's testimony during the Superior Court litigation - that he did not enter into a personal guaranty - is definitive evidence of the Debtor's intent to deceive. United Supply argues that the Debtor is judicially estopped from contradicting his testimony that he never intended to guarantee the debt.

Judicial estoppel "generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." Pegram v. Herdrich, 530 U.S. 211, 227; 120 S. Ct. 2143, 2153 (2000). The three criteria for employing judicial estoppel are: (1) that the party to be estopped has taken two irreconcilably inconsistent positions; (2) that the party changed his position in bad faith; and (3) that estoppel addresses the relevant harm and no lesser sanction is sufficient. MD Mall Assocs., LLC v. CSX Transportation Inc., 715 F.3d 479, 486 (3d Cir. 2013). The Third Circuit has further noted that "judicial estoppel is generally not appropriate where the defending party did not convince the [prior] court to accept its earlier position." G-I Holdings, Inc. v. Reliance Ins. Co., 586 F.3d 247, 262 (3d Cir. 2009). In a recent case, the Third Circuit acknowledged that "[a]bsent success in a prior proceeding, a party's later inconsistent position introduces no risk of inconsistent court determinations and thus poses little threat to judicial integrity." MD Mall Assocs., 715 F.3d at 487 (citing New Hampshire v. Maine, 532 U.S. 742, 750-51; 121 S. Ct. 1801, 1814 (2001)). See also Havird Oil Co., Inc. v. Marathon Oil Co. Inc., 149 F.3d 283, 292 (4th Cir. 1998); Kane v. National Union Fire Ins. Co., 535 F.3d 380, 386 (5th Cir. 2008); Hamilton v. State Farm Fire & Cas. Co., 270 F.3d 778, 782-83 (9th Cir. 2001). In another case, the Third Circuit found that the criteria that the party changed positions in bad faith was not met where a party who denied

5

ownership of certain property in a turnover action later confirmed ownership in a fraudulent transfer action, because the party simply conceded that the bankruptcy court had already made a determination as to ownership. In re Prosser, 534 Fed. Appx. 126, 130 (3d Cir. 2013).

Here, the Debtor's previous testimony did not persuade the Superior Court. Rather, the Superior Court explicitly determined that the Debtor's testimony, which United Supply is now seeking to use against the Debtor, was not credible. The Superior Court found that the Debtor intended to enter into the Guaranty and to guarantee RC's debt to United Supply. See Superior Court Opinion at 6. The Superior Court's decision directly contradicts the factual determination United Supply asks this Court to assume — that the Debtor never intended to guarantee RC's debt; because the Superior Court did not accept the Debtor's position in the Superior Court case, judicial estoppel does not apply.

In light of the Superior Court's factual determination of the Debtor's intent to guarantee RC's debt to United Supply, the doctrine of collateral estoppel does apply. Collateral estoppel applies when "an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation." Montana v. United States, 440 U.S. 147, 153; 99 S. Ct. 970, 973 (1979). There are four elements to collateral estoppel:

> (1) that the issue upon which preclusion is sought is identical to an issue involved in the prior action; (2) that the issue had been actually litigated in the prior action; (3) that the issue had been determined by a valid and final judgment; [and] (4) that the determination of the issue was essential to the prior judgment.

McLendon v. Cont'l Grp., Inc., 660 F. Supp. 1553, 1560 (D.N.J. 1987). Collateral estoppel applies here because all four elements are met: (1) the issue of a valid guaranty was identical in both the Superior Court and this Court; (2) the issue of the Guaranty was actively litigated in the

6

Superior Court; (3) the litigation resulted in a final and valid judgment (the Order); and (4) the determination of the issue of the Guaranty was essential to the Superior Court's judgment – it was essential to United Supply obtaining a judgment against the Debtor. Because the four elements of collateral estoppel exist here, this Court is bound by the Superior Court's decision.

Because the Superior Court found that the Debtor did intend to personally guarantee RC's debt, the elements of fraud necessary to prove § 523(a)(2)(A) & (B) cannot be present here. Specifically, the Debtor did not make a fraudulent statement because he knew he was entering into the Guaranty, and intended to enter into the Guaranty, at the time he signed it, despite his later testimony to the contrary before the Superior Court and this Court.

Even if the Superior Court's decision did not bind this Court under collateral estoppel, the Court reaches the same conclusion. The Debtor's testimony regarding the Guaranty was not credible. The Debtor claimed to not willingly enter into the personal Guaranty of RC's debt to United Supply, but the documents presented as evidence refute the Debtor's testimony. The Court finds that the Debtor knew he was agreeing to guarantee RC's debt to United Supply and that he intended to be bound by it at the time of signing.

II.     Second Count - Fraudulent Transfer

In addition to alleging fraud concerning the Guaranty, United Supply also alleged that the Debtor fraudulently transferred the Property to make himself "judgment-proof and avoid liability" to United Supply. Complaint ¶ 55. United Supply contends that the Debtor transferred the Property to his children without fair value and to avoid creditors. Id. ¶¶ 59-64.

The Debtor purchased the Property with his wife on May 18, 2011 for $745,000.00. On June 18, 2013, the Debtor and his wife transferred the Property to their children for $1.00, while they retained a life estate and continue to use and occupy the Property. United Supply argued that the Debtor transferred the Property knowing that he owed money to United Supply, as a result of the

7

Guaranty. Therefore, according to United Supply, the transfer was conducted without fair value and with intent to harm creditors by removing an asset which would have otherwise been available to secure payment of claims and judgments. Id. ¶ 64. At trial, United Supply provided evidence that the Property was purchased at a time when the Debtor arguably owed money to United Supply, among others.

In response, the Debtor testified that the transfer to his children was due to his declining health, further evidenced by the Debtor's wife taking out a life insurance to "protect the family's interests in the event of Mr. Crivaro's early death." The Debtor testified that his health was "not good," claiming that he suffered from worsening diabetes and had a triple bypass in 2003. In addition, the Debtor testified that there is a substantial mortgage against the Property, which had not been satisfied at the time of the transfer.

It was unclear from the Complaint, the trial, or the parties' closing briefs whether United Supply was alleging a right to recover a fraudulent transfer or that the alleged fraudulent transfer was part of a scheme to defraud creditors, which would render United Supply's claim nondischargeable. See Husky International Electronics, Inc. v. Ritz, 136 S. Ct. 1581 (2016). United Supply did not meet its burden of proof under either theory.

Before determining if there was a fraudulent transfer, the Court questions whether United Supply has authority to bring a fraudulent transfer claim. Courts may allow a creditor to bring suit if: (1) the creditor alleges a colorable claim that would benefit the estate; (2) the creditor makes demand on the trustee to file the avoidance action; (3) the demand is refused; and (4) the refusal is unjustified in light of the statutory obligations and fiduciary duties of the trustee. See Matter of Xonics Photochemical, Inc., 841 F.2d 198, 202 (7th Cir. 1988). See also Official Comm. of Unsecured Creditors of Cybergenics Corp. v. Chinery, 330 F.3d 548, 573 (3rd Cir. 2003) ("By permitting the trustee to avoid pre-bankruptcy transfers that occur within a short

period before bankruptcy, creditors are discouraged from racing to the courthouse to dismember the debtor during [its] slide into bankruptcy.").

United Supply did not seek leave to pursue an alleged fraudulent transfer. Furthermore, United Supply filed this adversary proceeding on its own behalf, not on behalf of the estate or all creditors. Finally, United Supply did not seek the Court's authority to pursue an avoidance action or make a demand of the Trustee to file an avoidance action. The Court concludes that United Supply does not have authority to pursue this claim.

Even if United Supply could bring a fraudulent transfer claim as an avoidance action, United Supply did not meet its burden of proof to show that the Debtor fraudulently transferred the Property. United Supply did not show that transferring the Property subject to the existing mortgage was not for reasonable equivalent value. Moreover, United Supply did not show that the Debtor was insolvent or became insolvent at the time of the transfer. Therefore, the Court cannot conclude that there was a fraudulent transfer under § 548(a)(1)(B).

United Supply also argues that the transfer was done with the intent to hinder or defraud creditors. When considering whether there was actual intent, courts typically look to the "badges of fraud": (a) the transfer was to an insider; (b) the debtor retained possession or control of the property transferred after the transfer; (c) the transfer or obligation was disclosed or concealed; (d) before the transfer was made or obligation incurred the debtor had been sued or threatened with suit; (e) the transfer was of substantially all of the debtor's assets; (f) the debtor absconded; (g) the debtor removed or concealed assets; (h) the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of obligation incurred; (i) the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation incurred; (j) the transfer occurred shortly before or shortly after a substantial debt was incurred; and (k) the debtor transferred essential assets of a business to a lienor who

transferred assets to an insider of the debtor. N.J.S.A. 25:2-26. See also In re Norvergence, Inc., 405 B.R. 709, 732 (Bankr. D.N.J. 2009).

Considering the badges of fraud, this Court determines that United Supply did not meet its burden of proof related to an intentional fraudulent conveyance. See In re Fruehauf Trailer Corp., 444 F.3d 203, 210 (3rd Cir. 2006) (explaining that the party bringing a fraudulent conveyance claim bears the burden of proof by preponderance of the evidence).

Although the transfer was to an insider, and the Debtor retained possession afterwards, United Supply did not show other badges of fraud. First, United Supply failed to show that the transfer was undisclosed or intentionally concealed in any way. The transfer was public record. Second, there was no evidence that the transfer was made after suit or the threat of suit. The transfer was made in July 2013, about a year before the United Supply filed suit in the Superior Court. There was no evidence that the transfer of the Property was substantially all of the Debtor's assets or that the Debtor absconded. Finally, there was no evidence that the Debtor removed or concealed assets.

United Supply highlights the fact that the Debtor transferred the Property for one dollar to insiders. While at first blush such a transfer appears questionable, United Supply has not met its burden of proof that the amount was less than a reasonably equivalent value. In addition, the Debtor testified that there was a substantial mortgage on the property. The mortgage was never offered as evidence and interest in the Property that was transferred may be with little or no equity. Furthermore, the chapter 7 trustee did not find equity in the Property and ultimately abandoned it. Transferring the Property subject to the mortgage, for $1 may have been for reasonable equivalent value.

United Supply also failed to show that the Debtor was insolvent or became insolvent shortly after the transfer. At trial, the Debtor testified that he did not become insolvent until about a year

10

after the transfer. Additionally, United Supply failed to prove that the transfer occurred shortly before or after a substantial debt was incurred. The Debtor testified that he was on regular 90-day credit terms with United Supply at the time of the transfer. Finally, United Supply failed to show that the Debtor transferred essential assets of the business. The Debtor testified that the Property was not connected to RC in anyway.

Since United Supply did not meet its burden of proof concerning many of the badges of fraud, this Court finds in favor of the Debtor – that the Debtor did not fraudulently transfer the Property.

As discussed above, United Supply also argued that the Debtor's transfer of the Property was part of a scheme such that United Supply's claim should be nondischargeable under Husky, 136 S. Ct. 1581. Husky is distinguishable from this case. In Husky, Chrysalis Manufacturing Corp. owed a debt incurred between 2003 and 2007 to Husky International Electronics, Inc. Daniel Ritz, the part-owner/director of Chrysalis transferred large sums of money from Chrysalis to numerous other companies Ritz owned or controlled. Id. at 1585. When Chrysalis sued to collect on the debt, Ritz filed for Chapter 7 bankruptcy. Id. The Supreme Court held that "actual fraud" in 11 U.S.C. § 523(a)(2)(A) encompasses fraudulent conveyance schemes even when those schemes do not involve a false representation. Id. at 1587. Additionally, Ritz's scheme - effectuated through a series of fraudulent conveyances - was intended to obstruct the collection of debt, making them fraudulent. Id. at 1586.

Here, United Supply did not show that the Debtor partook in a scheme to fraudulently transfer assets. Although the Supreme Court in Husky did not analyze whether one transfer can constitute a scheme, the second element identified as "fraud" – asset transfers intended to impair the creditor's ability to collect a debt – was not proven. As discussed above, United Supply did

11

not meet its burden of proof that there was a fraudulent transfer or that the Debtor was involved in a scheme to defraud creditors.

## CONCLUSION

For the reasons set forth above, the Court finds that United Supply has not met its burden of proof and that judgment should be entered in favor of the Debtor on all counts of the Complaint.

Dated:   April 24, 2017

_____
JERROLD N. POSLUSNY, JR.
U.S. BANKRUPTCY COURT JUDGE